James P. STAVROS, Administrator of the
Estate of Robert Nunley, Deceased,
Appellant,

v.

WESTERN & SOUTHERN LIFE INSUR-
ANCE COMPANY, INC., Appellee.

Court of Appeals of Kentucky.

Oct. 20, 1972.

Michael R. Dowling, Diederich, Her-
mansdorfer & Wilson, Ashland, for appel-
lant.

James L. Ford, Davis, Vigor & Ford,
Ashland, for appellee.

MILLIKEN, Justice.

This appeal involves a family squabble
over the $4,000 proceeds of an insurance
policy on the life of Robert Nunley, which
had been promptly paid by the appellee,
Western & Southern Life Insurance Com-
pany (hereinafter referred to as the Com-
pany), to the designated beneficiary, the
appellee Bonnie Potter, sister and guardian
of Robert, who had been a minor until his
eighteenth birthday a few months before
his accidental death.

The action began as a declaratory judg-
ment proceeding brought by the appellant,
administrator of Robert's estate, against
the Company and Bonnie but developed
into an action for recovery of the insur-
ance proceeds from the Company or Bon-
nie. The trial judge concluded that the in-
surance company or carrier was absolved
from further liability by KRS 304.14–260
(formerly KRS 304.688, as amended) ex-

plicitly saying, "* * * this judgment is final [as to the insurer] and there is no just cause for delay," but reserved for further development the appellant-administrator's claim against Bonnie.

KRS 304.14–260 has the general purpose of absolving from any further liability an insurance company which has paid its full obligation under a life insurance policy, but it is the contention of the administrator that the Company had the obligation to ascertain whether Bonnie, as duly appointed guardian of Robert, had properly effected substitution of herself as beneficiary under the policy in place of Robert's father who had taken out the policy on Robert and who was the original beneficiary of it. Robert's father died in 1960, a short time before Bonnie was appointed Robert's guardian. Two weeks after her appointment as guardian, Bonnie executed a change of beneficiary form before a sales agent of the Company in Ashland, delivered it to the Company at the time, but at no time obtained approval of her act by a court. The home office of the Company paid Bonnie the proceeds of the policy in 1967 after proof of Robert's death and never knew of the claim of the administrator to the proceeds until several days thereafter.

KRS 304.14–260 declares:

"Whenever the proceeds of or payments under a life or health insurance policy or annuity contract heretofore or hereafter issued become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance therewith or in accordance with *any* written assignment thereof, the person then designated as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor, and such payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has re-ceived at its principal office written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract."

On the Company's form 'Designation of Change of Beneficiary', Bonnie was described as sister of the insured, that she was married and was twenty-seven years of age at the time. Bonnie signed the form at the proper place under which was printed in small type, "Signature of Life Insured if 15 years or older, otherwise of Parent or Guardian." In accordance with the printed form, the Company's agent at Ashland certified "* * * that the person signing the foregoing 'Designation of Change of Beneficiary' is personally known to me; that the above signature was affixed in my presence; that the relationship stated above is to my knowledge correct and true; * * *." On the form itself, it was not shown that Bonnie was guardian of the insured as well as being his sister.

The insurance policy provided for changing the beneficiary in these words:

"The right to change the beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other change in this policy. The Insured may at any time designate or change the beneficiary by proper written request to the Company. No such designation or change will be effective unless and until recorded by the Company at its Home Office, but when so recorded the designation or change shall take effect as of the date the written notice was signed, whether or not the Insured is living at the time of such recording."

There is no *written* evidence that the insured either requested or assented to the change in the beneficiary, but at the time Bonnie effected the change Robert, the insured, was only eleven years of age,

and it probably was quite natural for Bonnie as his guardian to gather all assets into her hand any way she could accomplish it. As heretofore indicated, the question boils down to whether the Company was legally entitled to accept the change of beneficiary in the form described and to pay the insurance to Bonnie. Waiver of requirements for effecting a change of beneficiary may be made by a company in ordinary circumstances, for such requirements are for the benefit of the Company (Couch on Insurance, Section 28.89).

■ While it is apparent that KRS 304.-14–260 usually absolves a company from further liability when it makes payment of the policy " * * * in accordance therewith or in accordance with *any* written assignment thereof * * *", when it has no notice of the claim of any one else, the question still arises whether that means that the Company is absolved of further liability when it accepts a change of beneficiary from an individual not legally entitled to effect such a change. In the case at bar, Robert was too young at the time to consent to the change, so apparently the only legal way Bonnie could accomplish it was as Robert's guardian and she did not sign the Company's change of beneficiary form as Robert's guardian, but described herself as his sister. Had she properly effected the change of beneficiary as guardian, even then the proceeds would have had to be payable to her as guardian and not to her as his sister, and would have become part of Robert's estate.

We think these circumstances were enough to put the Company's home office on notice that Bonnie's attempted change of beneficiary was an unauthorized act, patently contrary to the Company's requirements on its change of beneficiary form which stipulated that the signature on the form should be that " * * * of the Life Insured if 15 years or older, otherwise of Parent or Guardian." And Bonnie did not execute the form as Guardian, but merely stated on it that she was a sister of the insured. Furthermore, even if it be conceded that the Company could waive some of its requirements as to changing the beneficiary, we do not believe that by so doing it could adversely change the power of the minor insured or his guardian to properly change the beneficiary. As heretofore quoted, the policy says, "The right to change the beneficiary is reserved to the insured * * *."

Regardless of what was going on in Bonnie's head at the time she sought to effect the change in beneficiary, the fact is she did not attempt it as guardian which, in turn, saves the question of whether she as guardian could legally have accomplished it without order of court authorizing it. We have found no Kentucky decision on the latter point, but see the following authorities to the effect that court approval is required: Re Seller's Estate, 154 Ohio State 483, 96 N.E.2d 595, 21 A.L.R.2d 1186, and annotation; Vance, Insurance 3rd Ed. (1951) p. 154; Kay v. Erickson, 209 Wis. 147, 244 N.W. 625; 39 Am.Jur. 2d, Guardian and Ward, Section 106; Couch, Insurance, Section 28.47.

■ While it is stated on the change of beneficiary form " * * * that a receipt for the benefits payable on the death of the insured, signed by the beneficiary named herein, shall constitute conclusive proof that all claims under the policy have been fully discharged and satisfied," it nevertheless does not protect the Company when the payment is made to an illegally designated beneficiary.

The summary judgment granted the Company is reversed for the reasons stated, and the case remanded to the trial court for determination of the issues presented.

All concur.