**William C. Bradshaw, by Leslie W. Benson, Conservator, v. Oscar J. Lucas.**
**William C. Bradshaw, Appellee, v. Leslie W. Benson, Conservator, Appellant.**

1. INSANE PERSONS, § 29*—*when income under trust should be ordered paid to conservator.* Where, in a spendthrift trust created by a father in favor of his son, the trustee was directed to pay the net income to such son in such manner as the trustee might deem to the best interest of the son, and where after the death of the father the son was adjudged distracted and a conservator for his property was appointed, on a bill by the conservator for accounting and for construction of the trust, a decree directing payment of such income to the son direct was improper, as same should be made to the conservator.

2. INSANE PERSONS, § 29*—*what expenses chargeable against income.* In such case the decree properly directed that the income was chargeable with the payment of taxes, insurance and repairs on the trust estate and the compensation of the trustee.

3. INSANE PERSONS, § 13*—*what is effect of adjudication.* From the time a person is adjudged to be distracted and incapable of

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

caring for his property, he has no more legal power to act for himself than if he were dead, and business dealings concerning him must be had through the conservator and what is to be paid to him must be paid to such conservator, and what is so paid to the conservator is in law paid to the ward in person.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed April 29, 1919. Rehearing denied July 9, 1919.

REDMON, HOGAN & REDMON, for appellant.

VAIL, POGUE & ALLEN, for appellee.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

Andrew J. Bradshaw, deceased, during his lifetime, by certain deeds and a declaration of trust, created a spendthrift trust in favor of his son, William C. Bradshaw, of which Oscar J. Lucas was made trustee. By the terms of the trust so created, the said Lucas was to have possession of certain real estate and receive the rents and profits therefrom "and to pay over the same to the said William C. Bradshaw in such manner as the said Oscar J. Lucas shall deem most efficient and to the best interests of the said William C. Bradshaw."

After the death of Andrew J. Bradshaw, William C. Bradshaw was adjudged to be a distracted person and, in consequence of such disability, incapable of managing and caring for his property and effects, and Leslie W. Benson was appointed as his conservator, and he thereupon qualified as such. Thereafter the said conservator filed a bill in the Circuit Court of Macon county in the name of his ward, making the said trustee, Oscar J. Lucas, defendant, in which he prays for an accounting by the said Lucas of the said trust fund; a construction of the trust; that the said Lucas be required to give a bond as such trustee, and that a por-

tion of the rents arising from said trust estate be paid
over to the conservator and that the said trust be there-
after executed under the supervision and direction of
the court.    Although Lucas, the trustee, had in the
meantime removed from the State of Illinois, he an-
swered the bill and such proceedings were had in the
case that on April 6, 1917, a decree was entered by the
agreement between the said trustee and the said con-
servator in which the said trustee was ordered to lease
the trust property and collect the rents; that he first
pay the taxes annually levied against the trust estate;
that he keep the buildings on the estate insured and in
repair; that he retain 5 per cent of the moneys collected
by him for his compensation; that he next pay to Ben-
son, the conservator, to be used for the support and
maintenance of the said ward, under the direction of
the court, the sum of $1,800 per annum, and that he loan
the balance of such fund; that the trustee give bonds in
the sum of $15,000, and that he make annual reports to
the court of all moneys collected and paid out by him
as such trustee.    On April 27, 1917, William C. Brad-
shaw, by one J. T. Whitney, filed a petition in his own
name in which he asks the court to appoint a *guardian
ad litem* or next friend to represent him, and prays that
the decree entered on April 6th be so modified as to re-
quire the said trustee to pay directly to the said peti-
tioner such sums as in the judgment of the court upon
a full hearing are sufficient and ample for his support
and maintenance.    To this petition the conservator filed
his answer in which, among other things, he avers af-
firmatively that the petitioner has been adjudged to be
a distracted person; that he has been appointed conserv-
ator for him and that he is still acting as such; that
the trust in question was created before the said *cestuis
que trust* petitioner was adjudged to be a distracted
person, that since the said trust was created the said
trustee Lucas had removed from the State; that the
said petitioner is a person of unsound mind who, by rea-

son thereof, is incapable of having any correct knowledge of the value of money; that he has squandered and wasted such money as has been given him for candy and intoxicating liquors and with lewd women. No replication to this answer was filed by or for the petitioner, but the court, on the motion of petitioner, set the cause down for hearing on the petition and answer and entered a decree without proof, finding that the averments in the petition were true, although some of such averments were directly denied by the answer; and without any findings as to the affirmative facts averred in the answer of the conservator, the court finds that the equities are with the petitioner and orders that the former decree be modified as prayed in the petition and directs the said Lucas, as such trustee, to turn over to the petitioner such sums at such times and in such manner as the said Lucas shall deem most efficient and to the best interests of the said petitioner, and as part of said decree and without any prayer therefor except the prayer for general relief, the court enjoined the conservator from asserting or demanding any rights or interests as such conservator in or to said trust fund or the income therefrom. In all other respects the original decree remains unchanged. This appeal is prosecuted by Benson, the conservator.

Appellee contends that the disposition of the income from the trust fund was wholly within the discretion of Lucas, the trustee, and that the court was without power to require him to make any particular disposition of it, and was without power to require him to pay it, or any part of it, over to Benson, the conservator of William C. Bradshaw, the ward and *cestuis que trust*.

When Andrew J. Bradshaw created this spendthrift trust, he undertook to provide for the proper maintenance of his son, William C. Bradshaw, from the income of certain property without placing it in his power to squander the property from which the income

was derived. To effectuate that purpose he provided that Lucas, the trustee named, should have possession of the trust property and receive the rents therefrom and other income accruing thereon "and to pay over the same to William C. Bradshaw in such manner as the said Oscar J. Lucas shall deem most efficient and to the best interests of the said William C. Bradshaw." By the terms of that declaration of trust, Lucas was to pay over to William C. Bradshaw in all events all of the rents and income from the trust estate. While it is there provided that the heirs of the body of William C. or his next of kin shall, at his death, have the trust estate, there is no provision or suggestion anywhere that an accumulation of the income from the trust estate was contemplated as a possibility. The only discretion he was given in the matter was as to the manner of its payment, which was to be such as Lucas should deem most efficient for the best interest of William C. That discretion is not an arbitrary one, but is one that must be so exercised as to carry out the purpose of the trust, which clearly does not contemplate an accumulation of the income from year to year in the hands of Lucas; or, in other words, the clear purpose of Andrew J. Bradshaw in creating this trust was that William C. Bradshaw should annually have all the net income from the trust estate. The construction given this clause by the Circuit Court was correct, in so far as it held that such rents and income were chargeable with the payment of taxes, insurance and repairs on the trust estate, and the compensation of the trustee. In other words, it was only the *net* rents and income that it was intended should be paid to William C. It is also true that the payments were by the terms of the trust to be made to William C. and not to any one for him or for his use. At the time that trust was created and the powers and duties of the trustee were defined, Andrew J., while not considering William C. to be a suitable person to have the control of the whole trust es-

tate, did consider him capable of handling and entitled to have and manage the entire net rents and income from such estate. After the death of Andrew J., William C. was adjudged to be a distracted person, and in consequence of such disability incapable of managing and caring for his property and effects, and appellant was duly appointed his conservator, and qualified as such. From the time a person is adjudged to be distracted and incapable of caring for his property and effects, until, if ever, he is adjudged to be restored, he has no more legal power to act for himself than as if he were dead. A contract made, or release or receipt given, by him has no legal significance. Chapter 86, sec. 14, Rev. St. (J. & A. ¶ 7298). Persons who during that time have business transactions in which he is concerned must deal with him through his conservator. Chapter 86, sec. 5, Rev. St. (J. &. A. ¶ 7289). What is to be paid to him must be paid to his conservator. Chapter 86, sec. 5, Rev. St., and what is paid to the conservator is in law paid to the ward in person and is not paid to some one else for his use, as would be true if the same were paid to his creditors. The fact that a person is unfortunate to the extent of losing his ability to manage, handle and care for his property and effects in no way interferes with his right to have the income from trust property that has been set aside to supply him with either necessities, comforts or luxuries so applied. His disability tends to increase rather than to decrease his needs. The Circuit Court erred in decreeing that Lucas, the trustee, should pay any portion of the income from the trust estate directly to William C. Bradshaw in person, and in enjoining the said conservator from asserting or demanding any interest in the income.

The first decree, all but one clause of which still stands as a part of the decree appealed from, recites that the facts material to the trial of the issues had been agreed upon in a writing which was on file in the

case, and that the findings of fact in that decree were based on that writing. Those findings of fact have not been challenged by either of the parties to this suit. We therefore assume that they are correct. On that assumption the court should have ordered the trustee to pay annually to Leslie W. Benson, the conservator for William C. Bradshaw, during the life of the said ward, all of the net income from the trust estate at such times during each year in such manner as the said Lucas, in the exercise of a sound judgment, shall deem most efficient and to the best interest of the said William C. Bradshaw.

The decree appealed from is therefore reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*