NATIONAL CITY BANK OF CLEVELAND, EXR., PLAINTIFF, *v.*
HEWES ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 601035.   Decided November 28, 1962.

*Mr. Lester L. Yoder*, for plaintiff, The National City Bank of Cleveland, Extr.

*Mr. Joseph M. Poe*, for defendant, Helen E. Hewes.

*Mr. Harry B. Olds, Jr.*, and *Mr. E. C. Phillips*, for defendant, Society National Bank of Cleveland.

*Mr. Jay L. Mennell*, for defendant, The National City Bank of Cleveland.

MERRICK, P. J. This declaratory judgment action was brought by The National City Bank of Cleveland as Executor of the estate of Gertrude F. Risley o. w. Gertrude Risley, deceased, to have determined the respective rights of the estate and of the defendant, Helen E. Hewes, to certain funds which are contained in a joint and survivorship account, in the name of the decedent and the defendant, as well as certain stocks and bonds which are registered in both names as joint tenants with right of survivorship.

The pertinent facts in this case are that the decedent contributed all the funds and purchased all the stocks and bonds which are now in issue; and that, subsequent to creating the joint account, the decedent became incompetent, necessitating the appointment of a guardian for her. The guardian did not use any of the funds in the account for the decedent. At her death, the decedent left a will in which she bequeathed to the defendant, Helen Hewes, ''all property which said Helen E. Hewes and I own together, either as joint tenants or tenants in common * * *'' The single question which confronts the Court is the effect of the decedent's incompetency upon the defendant's right of survivorship.

In Ohio, the validity of joint and survivorship bank accounts has been recognized since the Supreme Court's decision in *Cleveland Trust Co.* v. *Scobie*, 114 Ohio St., 241, 151 N. E., 373 (1926). Although the court in that case spoke of ''donative intent,'' and used other terms appropriate to the theory of a gift with respect to the creation of the joint interest, the court declared that joint interests with the right of survivorship existed by virtue of the contract of deposit. In sustaining the right of survivorship on the theory of contract, the court affirmed the oft-stated rule that common-law joint tenancy, with its incidental right of survivorship, does not exist in Ohio. See *Farmers and Merchants National Bank* v. *Wallace*, 45 Ohio St., 152, 12 N. E., 439 (1887); *Tabler* v. *Wiseman*, 2 Ohio St., 207 (1853); *Sergeant* v. *Steinberger*, 2 Ohio, 305 (1826).

The Supreme Court has also sustained joint interests with right of survivorship in stock certificates on the basis of a contract between the co-owners wherein the right of the survivor to succeed to the entire ownership of the stock was expressly

spelled out. *In re Estate of Hutchinson*, 120 Ohio St., 542, 166 N. E., 687 (1929).

Is the contract establishing joint and survivorship rights in property impaired or terminated by the subsequent incompetency of, and the appointment of a guardian for, one of the co-owners? This question has not, as yet, been considered by the Ohio Supreme Court. But there are a few appellate court decisions in point.

A case in point, dealing with the effect of incompetency on a joint and survivorship account, was *Abrams* v. *Nickel*, 50 Ohio App., 500, 198 N. E., 887 (1935). The controversy in this action was between the guardian of an incompetent and the latter's co-depositor over the right to the funds in the joint and survivorship account. The court held that although the account was valid when established, the subsequent mental incompetency of the one depositor altered this relationship. The appointment of the guardian had the effect of terminating the agreement between the depositors. There was no evidence of what percentage of the funds in the account had been contributed by each party. The court held that equitable principles required, in the absence of some extraordinary circumstances, an equal division of the assets.

The next case in which this question was involved was *Ulmer* v. *Society for Savings*, 41 N. E. (2d), 578 (Ohio App., 1942), 35 Ohio Law Abs., 525. Again, as in the *Abrams case, supra,* the action was between the guardian and the competent depositor. The court deviated from the *Abrams decision,* holding that distribution of the funds upon termination of the account should be made according to the amounts deposited by each of the co-depositors. It should be noted that the court made no declaration on the question of whether the mere fact of incompetency of the one depositor necessitated the termination of the account. Although the dissolution of the account may be inferred from the court's holding.

Another reported case dealing with the effect of the incompetency of one joint depositor is *In re Estate of Jones*, 122 N. E. (2d), 111 (Ohio App., 1952). The dispute here was between the administrator of the incompetent's estate and the de-

fendant, the surviving joint depositor over the right to the assets in the joint account. The defendant was the nephew of the decedent. During his aunt's last years, the defendant and his wife, had lived with her and cared for her needs. The aunt established a joint and survivorship account in the name of herself and the defendant. The intention was that the defendant would use the funds in the account to pay the medical and funeral bills of the decedent, as well as other expenses incurred by her during her life, and keep the balance after her death as compensation for his services. Just prior to his aunt's death, the defendant was appointed guardian for her. The Court of Appeals held that, under the circumstances, defendant was entitled to the funds. The court's opinion casts considerable doubt upon the authority of the *Abrams case*:

"It would be most unusual if the appointing of a guardian of one of the parties to an agreement could in any way deprive the other party to the agreement, which agreement was valid when made, of property rights already vested thereunder.
"* * *

"The holding that the joint survivorship accounts must end because of the appointment of a guardian is not completely accurate. *In re Estate of Jones, supra*, 114."

The *Jones decision, supra*, is the only reported Ohio case which, like the instant case, deals with the effect of incompetency on the right of survivorship in a joint savings account. The *Abrams* and *Ulmer cases, supra*, were concerned with the rights of the incompetent and his joint depositor *inter se*. Considerations of the needs of the ward and of the proprietary rights of joint tenants *inter vivos* which were of importance in those cases, are absent from the instant case. Consequently, even if the *Jones decision, supra*, were not on the books, those two decisions would not be controlling in this case.

But the *Jones case, supra*, is also significantly different from the present case. The court in that decision did not state that the incompetency of one joint depositor could *never* cause the termination of the joint and survivorship interest. The court relied strongly on the fact that the joint account was part of a larger agreement between the parties:

"It must be concluded, therefore, that *where the contract for a joint and survivorship account is only a part of the whole*

*agreement between the parties,* the provisions of which require one party to render services to the other and by the agreement is to be paid out of the account in the amount remaining at time of death, and such services were rendered continuously as called for by the agreement, *the party who owes the obligation of care has a vested interest* in the accounts and the appointment of a guardian *can in no way disturb such interest, or impair the obligation of contract."* In re Estate of Jones, supra. Emphasis supplied.

No contract for services exists in this case. The absence of controlling authority in this state demands a survey of other jurisdictions.

The ground upon which rests the law of joint and survivorship accounts in this country is unsettled. Attempts to fit this new legal creation into familiar areas of agency, contract, trusts and property have led to the adoption of disparate theories among the states which are sometimes conflicting and confusing. See *Kepner, The Joint and Survivorship Bank Account—A concept Without a Name,* 41 Cal. L. Rev., 596.

With reference to proprietary rights during the lifetimes of the depositors, one of whom has become incompetent, there is no discernible harmony among the cases. The conflict arises not only from the disparity of the theories used in the different states, but also from the equitable considerations in the individual cases. 62 A. L. R. (2d), 1091 (1958). Questions of the amount contributed by each, the intent of the parties, the needs of the incompetent, etc., bear heavily on the results.

But the situation is different with respect to survivorship rights. If not in theory, then at least in terms of results, there is virtual unanimity in the decisions which have considered the question. Without exception, these courts have followed the rule that if, under the circumstances and the applicable law, the surviving joint depositor would have been entitled to the balance of the account in the absence of any intervening incompetency, the fact that one joint depositor becomes incompetent does not destroy his survivorship rights, or those of the other depositor. *Howard* v. *Imes,* 265 Ala., 298, 90 S. (2d), 818 (1956); *Doran* v. *Hibernia Savings and Loan Soc.,* 80 Cal. App. (2d), 790, 182 P. (2d), 630 (1947); *In re Griffith,* 33 Del.

Ch., 387, 93 A. (2d), 928 (1953); *Coolidge* v. *Brown*, 286 Mass., 504, 190 N. E., 723 (1934); *Boehme* v. *Boehme*, 264 Wis., 15, 58 N. W. (2d), 411 (1953).

If the incompetent, at the time he established the joint account, actually intended to create a joint interest in someone else, with a right of survivorship, there should be no frustration of that interest by holding that these rights which are bestowed upon the competent "donee" automatically terminate when the depositor becomes incompetent.

In the inter vivos situation, the welfare of the ward must be considered. It would be inequitable to hold that the funds in a joint account which were contributed by the incompetent are irretrievably beyond his reach because he is now incapable of exercising his right of withdrawal. But is termination of the account the only solution? This, of course, is not our problem here. But it should be noted that many other jurisdictions have handled the problem by allowing the guardian to withdraw as much as is necessary for the support of the ward. In the *Abrams case, supra,* it was presumed that in the face of the incompetency the joint tenancy could not continue since "obviously * * * the guardian could not become a joint owner of the account * * *" If by this statement the court meant that to allow the guardian to assume the discretionary right of withdrawal formerly held by the ward, would it create an unworkable relationship with the competent tenant? It is well settled that, in absence of statutory enactment, a guardian may not exercise the discretionary rights of his ward, 44 Corpus Jur. (S), Sec. 49, p. 134.

The guardian in withdrawing from the account only as much as is necessary for the support of the ward, is carrying out a ministerial duty, not exercising a discretionary right. *Howard* v. *Imes*, 265 Ala., 298, 90 S. (2d), 818 (1956). Thus the *Abrams case, supra,* seems unsupported by other authority.

The right of survivorship must still be proved to have been the intent of the deceased depositor. It is now settled that the form of the account is not conclusive as to the intent of the parties to create a joint and survivorship relationship. *Fecteau* v. *Cleveland Trust Co.*, 171 Ohio St., 121, 167 N. E. (2d), 890 (1960). Evidence may be introduced as to the intent of the

parties, even after the decease of one depositor. So in the present case, the right of the defendant to receive the joint assets can be no greater than it would have been had the decedent not been incompetent. But in the absence of evidence showing that Gertrude Risley did not intend to create a joint and survivorship interest in the defendant, the latter should be entitled to the joint assets. The additional question of whether the bequest in the will giving all the jointly owned assets to the defendant would be effective to transfer the assets in question to the defendant, even if the joint tenancy were deemed dissolved by the decedent's incompetency, now becomes moot if the survivorship rights are effective.