IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 6, 2008 Session

# THE ESTATE OF ADA TOWNSON, By and through her duly appointed Conservator, East Tennessee Human Resources Agency, by its representative agent, Carol Silvey, v. THE ESTATE OF JEANETTE EAST, By and through her duly appointed Conservator, Polk Cooley, Esq.

**Direct Appeal from the Chancery Court for Roane County**
**No. 15621     Hon. Frank V. Williams, III., Chancellor**

---

**No. E2008-00689-COA-R3-CV  - FILED JANUARY 20, 2009**

---

The real parties at interest in this action are Carol Silvey, plaintiff and Jeanette East, defendant. They are represented by their respective conservators. Investments were made in the parties' joint names and when the investments matured, the conservator for Jeanette East made investments in a sole account of Jeanette East. The conservator for Carol Silvey brought this action for a declaration that the investments should remain in the joint estates. The Trial Judge approved the actions of the conservator for Jeanette East but on appeal, we order that the accounts be returned to the joint ownership status.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

William A. Reeves, Knoxville, Tennessee, for appellant, The Estate of Ada Townson.

Jennifer E. Raby, Cockwood, Tennessee, for appellee, The Estate of Jeanette East.

**OPINION**

## Background

Plaintiff, Estate of Ada Townson, by and through its conservator, filed a Declaratory Judgment action against the Estate of Jeanette East, asserting that any joint assets that had been altered should be returned to their former joint status. The Petition avers that East and Townson were sisters who owned a number of bank accounts jointly, and that in 2005 they were determined to be incapacitated and both had conservators appointed. The Petition sought a declaration that the joint accounts should be maintained as joint accounts, and that if the status of any of the accounts had been changed by the conservator, they should be ordered restored to their prior status.

The conservator for the Estate of East, Answered, stating that East and her deceased husband had amassed a significant estate, and denied that all of the accounts listed in plaintiff's exhibit were held jointly. A trial was held on February 11, 2008, and the conservator for East testified that he had determined that the funds in the CD's/accounts, came from money that the Easts had accumulated, as well as from the sale of their farm after the husband died, and the sale of a rental house.

He explained that he interpreted the accounts that were titled in both sisters' names as being an agreement that the money would remain that way for the term of the CDs only, and when the CDs expired, he reinvested the money in a new CD solely in East's name. He explained that he did this because it was East's money, and because prior accounts could leave these assets open to a claim from TennCare for Townson's share of the expense.

Following trial, the Trial Court found that there was no proof regarding how the parties had treated such accounts in the past, and that it was thus not possible to say that the parties had a certain course of dealing that would be indicative of how they would have handled such accounts in the future. The Court said that it was not convinced by plaintiff's argument that these accounts could be continued with the same ownership status, but could not be cashed out or otherwise have the ownership status changed after the parties were declared incompetent. The Court held the conservator for East had not engaged in self-dealing, but acted properly and had the right to do what he had done, as it was a reasonable course of action.

On appeal, plaintiff raised this issue:

Whether the Trial Court erred in holding that Ms. East's conservator did not act beyond the scope of his agency by transferring all of the funds from the parties' jointly held certificates of deposit and joint checking accounts into accounts titled solely in Ms. East's name?

The exhibits in the case demonstrate that the accounts/CDs at issue were all jointly titled, some expressly listed with rights of survivorship.

Appellee argues that the Trial Court was correct in holding that the conservator for Ms. East acted properly in closing/redeeming the accounts/CDs and reopening the accounts or reinvesting the funds in the name of Ms. East alone, because there was no evidence that the conservator was self-dealing, and the proof showed that most of the funds in the accounts came from Ms. East.

Appellant argues the conservator should not have changed the ownership of these accounts/CDs, because the conservator is charged with managing the estate so that if the incompetent recovers, she will find the estate in as close as possible to the same state she had left it. Appellant further argues that the conservator does not have the authority to exercise elective rights of the ward without prior court approval.

Appellant cites the case of *Grahl v. Davis*, 971 S.W.2d 373 (Tenn. 1998), wherein the conservator was the daughter of the ward, and she allowed her father to redeem certain jointly-held CDs and reinvest them either in his sole name, or as joint tenants with the conservator. In analyzing whether this action was proper, the Supreme Court explained:

> A conservator occupies a fiduciary position of trust of the highest and most sacred character. The conservator is to manage the conservatee's estate to the best advantage. The conservator should endeavor to manage the estate so that if the incompetent person recovers, he or she will find the estate as nearly as possible in the same condition as he or she left it. A conservator should not change the character of the conservatee's property interests unless the change is necessary to protect and promote the interests of the conservatee. In considering a conservator's request to cash a life insurance policy for the benefit of the conservatee's estate, this Court, in *Folts v. Jones*, stated:
>
> Before the character of the interest in property held by a [conservatee] can be changed, it must be made manifest that it is necessary to protect and promote his interest. Although as a rule, the court will preserve, as far as possible, the interests of the succession, this rule yields to the paramount rule which makes the [conservatee's] welfare the first consideration without regard to the rights of those who may have eventually rights to succession.
>
> A conservator is not the alter ego of the conservatee, however, and has no authority to exercise an elective right or power of the conservatee. Therefore, a conservator has no authority to terminate joint accounts in which the conservatee has an interest or to change a beneficiary on a life insurance policy. Instead, the conservator must petition the court, and the court, on behalf of the conservatee, can exercise such an election if it is clearly proven to be in the best interests of the conservatee.

*Id*. at 377-378 (citations omitted).

In the case of *Folts v. Jones*, 132 S.W.2d 205 (Tenn. 1939), the conservator petitioned the court to allow him to surrender/cash in a life insurance policy for the ward, rather than continuing to pay the premiums related thereto. The Supreme Court in that case said:

> An insane person is, of course, incapable of exercising a right or power of election, but any election on his behalf should be exercised by the court. But, to authorize such election it shall clearly appear to be for the best interests of the incompetent. . . . the court will not elect to order a surrender of the policy for its cash value and thereby destroy the beneficiary's contingent interest, save and unless it be plainly shown to be for the manifest interest of the insane insured.

*Id*. at 207-208.

This rule that the conservator cannot exercise elective rights of the ward was also followed in the case of *Blackburn v. Blackburn*, 63 S.W.3d 338 (Tenn. Ct. App. 2001), which relied upon the above cited cases as authority, as well as cases from other jurisdictions, including (but not limited to) *In re Estate of Wright*, 424 N.W.2d 268 (Mich. 1988)(conservator may not change the nature of joint accounts created by the disabled adult before that person became disabled); *Hendricks v. Grant County Bank*, 379 P.2d 693 (Okla. 1963)(guardian has no power to exercise personal right of ward with respect to jointly held CD unless it is shown that funds are needed for ward); and *Howard v. Imes*, 90 So.2d 818 (Ala. 1956)(guardian cannot terminate joint account but can make periodic withdrawals as needed for care of incompetent).

In *Howard*, the Alabama Supreme Court relied on a case with facts strikingly similar to this case, i.e. *In re Guardianship of Williams*, 313 So.2d 411 (Fla. Dist. Ct. App. 1975). In *Williams*, the conservator for Edith Williams petitioned the trial court for direction after finding two bank passbooks, titled in the names of Ms. Williams and Bell Stokes "payable to either or the survivor". *Id.* Stokes was also under conservatorship, and the court ordered the accounts be closed and the money divided equally between the two wards' estates. *Id.*

The appellate court ruled that the court erred in ordering such action be taken, as the general rule is that the conservator had no right to make withdrawals from a joint bank account unless the money was needed by the ward, and also that the effect of incompetency was the loss to the incompetent's estate of discretionary property rights, leaving the estate with only the right to proceed to survivorship, or to only use such funds as were needed by the ward. *Id.* The court ordered that the joint accounts with right of survivorship be reinstated. *Id.*

Based on the foregoing precedent, a conservator may not elect to terminate a joint account, and can only withdraw such funds from said account as are shown to be necessary for the care of the ward. Accordingly, the Trial Court erred in determining the conservator's actions in this case was proper. This was error because the conservator did not show that the funds he withdrew from the joint accounts/CDs were needed for her care. We reverse the Order of the Trial Court and direct that the accounts/CDs be restored to the joint status as existed when the incompetencies

occurred.   The Judgment of the Trial Court is reversed and the cost of the appeal is assessed to the Estate of Jeanette East.

_____
HERSCHEL PICKENS FRANKS, P.J.